The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan Chapman. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is April 1, 1992;
2. On such date the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
3. On such date the employer-employee relationship existed between the employee-plaintiff and the employer-defendant;
4. On such date the employer-defendant employed three or more employees;
5. The employee-plaintiff has not received weekly compensation from the date of injury to present;
6. Employer is insured through Liberty Mutual Insurance Company;
7. The employee-plaintiff's average weekly wage is to be determined by a Form 22.
8. In addition to the above stipulated evidence, the following evidence was also stipulated:
a. Form 22 dated May 19, 1994.
b. The 63-page package of medical records and reports.
c. Answer to interrogatories.
d. Employment records.
 e. Transcript of the recorded statement and other documents.
* * * * * * * * * * *
The Full Commission rejects the finding of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in 1969. As of the date of hearing, she had worked for over 12 years as a general straightening operator. Her job involved operating a machine which straightened coils of metal. Plaintiff's job duties required her to pull the metal from one spool approximately 16 feet and cut the metal if it was too thick. She further straightened and spliced the metal, placing the metal on another spool. Depending on the metal, plaintiff would do this for up to 30 times a day. In performing her job, she would load the material into the machine, make necessary adjustments to the machine, remove defective material from the reel, weld strips together when necessary and unload the spool of material from the end of the line. She was required to use a metal cutter 20 to 25 times each day to cut samples from the material. The cutter had a lever which she would pull down in order to activate the blade. Plaintiff needed to do rapid, continuous movement of her fingers and wrists in order to perform her job duties.
2. In December 1989 plaintiff went to Dr. Keeling with complaints of pain in both hands along the median nerve distribution. He had nerve tests performed and then diagnosed her condition as bilateral carpal tunnel syndrome. Her right hand was worse than the left, so Dr. Keeling performed surgery to her right hand on March 9, 1989. Her condition improved following the surgery and she subsequently returned to work for defendant-employer.
3. On April 6, 1992 plaintiff saw Dr. Smith for complaints of severe progressive numbness in her left hand and arm which had worsened significantly over the previous two months. Dr. Smith ordered nerve tests which were positive for carpal tunnel syndrome. Consequently, Dr. Smith performed carpal tunnel release at Annie Penn Memorial Hospital and kept plaintiff out of work from July 17, 1992 to April 24, 1993. Plaintiff was then released for restricted duty. Plaintiff has remained at work since being released from the last surgery.
4. Plaintiff continued to experience symptoms after surgery but they were along the ulnar nerve distribution. Dr. Smith treated her with medication and advised her not to engage in rapid and continuous movements of her hands and arms.
5. Plaintiff's job did involve rapid and continuous movements of her hands and arms. Plaintiff has established that her work activities placed her at an increased risk of developing carpal tunnel syndrome as compared to the general public not so employed. Further, Dr. Smith was of the opinion that plaintiff's job activities had aggravated her condition, and the job itself placed plaintiff in a position of developing carpal tunnel as compared to the general public.
6. Plaintiff has proven that her carpal tunnel syndrome was aggravated by her job activities and is an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which excluded all ordinary diseases of life to which the general public was equally exposed.
7. The Full Commission at this time will not address the issue of permanent partial disability. There has been no permanent partial disability rating, if any, of plaintiff's condition by a physician.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which is an ordinary disease of life to which the general public was equally exposed. G.S. 97-53(13); Booker v. Duke Medical Center, 297 N.C. 458
(1979).
2. Plaintiff is entitled to temporary total disability benefits for the period of July 17, 1992 to April 24, 1993 at a compensation rate of $194.17 per week for forty and two-sevenths weeks under the Workers' Compensation Act for her carpal tunnel syndrome. N.C.G.S. § 97-29.
3. Defendants shall pay all medical bills incurred or to be incurred as a result of plaintiff's occupational disease. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for workers' compensation benefits as a result of her occupational disease is GRANTED.
2. Plaintiff is entitled to receive temporary total disability benefits for a period of forty and two-sevenths weeks at a rate of $194.17 per week. This sum has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
3. Defendants shall pay all medical bills incurred or to be incurred by plaintiff as a result of her compensable injury.
4. An attorney's fee of twenty-five percent is approved for plaintiff's counsel and shall be paid in one lump sum.
5. Defendants shall pay costs.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 3/20/96